**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAY 11 2023**

JEFFREY P. COLWELL
CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02221-PAB-MEH

WYATT T. HANDY JR.

    **Plaintiff,**

v.

SHEDERICK DOBBIN,

LYNETTE NEDERHOED,

    **Defendant(s).**

---

### THIRD AMENDED VERIFIED COMPLAINT AND JURY DEMAND

---

THE Plaintiff, Wyatt T. Handy Jr., alleges the following:

### INTRODUCTION

1. This civil action filed by Plaintiff, encompasses a malicious prosecution, where Defendants Dobbin and Nederhoed, of the Denver Police Department (DPD), made material false statements and omissions, in their police reports and arrest warrant affidavit, to mislead the issuing Magistrate and prosecution into making a probable cause determination, to have Plaintiff arrested and charged with "third degree" assault, effectively violating Plaintiff's Fourth and Fourteenth Amendment rights to the United States Constitution.

1

2. Defendants Dobbin and Nederhoed had an independent motive to subject Plaintiff to reprisals, and collectively encouraged, promoted and/or participated in an overall objective to subject him to unconstitutional violations.

## JURISDICTION AND VENUE

3. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5. Jurisdiction supporting Plaintiff's claims for attorney fees is conferred by and brought pursuant to 42 U.S.C. § 1988.

6. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).

7. All parties reside within the District of Colorado, and the events described in this Complaint occurred in the District of Colorado.

## PARTIES

8. Wyatt T. Handy Jr. (Plaintiff)
   P.O. Box 913
   Littleton, CO. 80160-0913
   (720) 461-0787
   w.t.handyjr@gmail.com

9. Shederick Dobbin (Defendant)
   1625 S. University Blvd.
   Denver, CO. 80210

10. Lynette Nederhoed (Defendant)
    1625 S. University Blvd
    Denver, CO. 80210

2

## FACTUAL ALLEGATIONS

**A. Ashlee Handy Boss Sharon Dorcas Pressed her to File a Police Report Alleging Plaintiff Showed up to her job With a Gun**

11. On August 25, 2018, Ashlee Handy, (herein "Mrs. Handy"), entered into a general contractor agreement with PrimeSource and Maximus Inc. as a customer service representative.

12. PrimeSource is a staffing agency.

13. Maximus Inc. is a call center that specializes in open enrollment for health insurance benefits.

14. Open enrollment for health insurance benefits begins on November 1st and ends December 15th every year.

15. On August 27, 2018, Mrs. Handy began paid open enrollment training with Maximus Inc.

16. Mrs. Handy's training with Maximus Inc. lasted approximately 6-8 weeks.

17. In October 2018, Mrs. Handy completed her paid open enrollment training and began working at Maximus Inc. in their call service center.

18. Maximus Inc. is located in Denver at 4500 Cherry Creek S. Dr, Denver, CO. 80246.

19. At the time that Mrs. Handy worked at Maximus IncShe and Plaintiff resided less than a mile away from Maximus Inc.

20. On December 5, 2018, Mrs. Handy contacted her supervisor Sharon Dorcas, (herein "Mrs. Dorcas"), to inform her about issues she was having at home.

21. Mrs. Handy did this in case she needed to take "time off" work in the immediate future.

22. Mrs. Handy felt comfortable discussing her issues with Mrs. Dorcas.

23. Sometime later in the day on December 5, 2018, Mrs. Handy left work early to go to a scheduled appointment.

24. On December 5, 2018, sometime after Mrs. Handy left work to attend her scheduled appointment Plaintiff showed up to Maximus Inc. to take her to lunch.

25. It had skipped Plaintiff's mind that Mrs. Handy had a scheduled appointment that day.

26. Plaintiff was contacted by Mrs. Dorcas who informed him that Mrs. Handy had left work for the day.

27. After Plaintiff left Maximus Inc. Mrs. Dorcas accused him of coming to Mrs. Handy's job with a gun.

28. On December 6, 2018, upon arriving at work, Mrs. Dorcas contacted Mrs. Handy and requested her to come to her office.

29. Mrs. Dorcas informed Mrs. Handy that Plaintiff showed up to Maximus Inc. with a gun looking for her.

30. Mrs. Handy was confused by this accusation, because Mrs. Dorcas never called the police to report the alleged incident, and because Mrs. Handy had seen Plaintiff not long after he left Maximus Inc. that day.

31. However, Mrs. Dorcas demanded Mrs. Handy to go to the police department to file a report regarding the alleged gun incident.

32. Mrs. Handy took Mrs. Dorcas' demand to mean, "if she didn't go to the police, she would lose her job."

33. Mrs. Handy left her job and went to the police department to file a police report regarding Mrs. Dorcas' claims that Plaintiff showed up to Maximus Inc. with a gun.

**B. Defendant Dobbin Was Under Investigation by DPD For Police Misconduct When he Contacted Mrs. Handy**

34. On December 6, 2018, Defendant Dobbin was clerking the front desk at DPD, when Mrs. Handy walked in to make a report for Mrs. Dorcas of Plaintiff coming to her job with a gun.

35. Unbeknownst to Mrs. Handy, Defendant Dobbin is a dirty cop, that's why he was clerking the front desk of the DPD police precinct.

36. Defendant Dobbin was taken off patrol duties related to instances of misconduct that he was being investigated for by the DPD.

37. At the time of the allegations in this complaint, Defendant Dobbin wss under investigation by the DPD for interfering with an investigation by using a police database to share investigative information with a suspect's girlfriend.

38. Defendant Dobbin used the National Crime Information Center database to look up an investigation into a man that he knew from his other job working security at a nightclub.

39. The man was suspected in a June 11, 2018, attack on a city employee.

40. The suspect's girlfriend called Defendant Dobbin who confirmed to the girlfriend that the man was part of an active investigation.

41. Also, during the time prior to him contacting Mrs. Handy, Defendant Dobbin was under investigation by the DPD for being at a strip club when he was supposed to be on duty working.

42. The DPD discovered that Defendant Dobbin was supposed to work a 7 a.m. to 3 p.m. shift on November 5, 2018, but he left around 2 p.m. without permission.

43. Video showed Defendant Dobbin at PT's Showclub on Evans Avenue about 20 minutes later.

44. Investigators started looking into Defendant Dobbin when one of the dancers at PT's was found dead.

45. During the death investigation conducted by the Lakewood Police Department (LPD) investigators discovered Defendant Dobbin had previously looked up the criminal history of the deceased stripper and two other people.

46. When interviewed by the LPD Defendant Dobbin admitted to running the woman's name and the names of two associates.

47. Both Investigations were later substantiated and Defendant Dobbin was reprimanded for violating rules concerning unauthorized use of the criminal background check system and rules about interfering with the operations of the DPD.


**C. Defendants Dobbin And Nederhoed Made Material False Statements and Omissions in Their Police Reports and Arrest Warrant Affidavit to Mislead the Issuing Magistrate Into Making a Probable Cause Determination to Arrest and Charge Plaintiff With Third Degree Assault**


**i. <u>Defendant Dobbin</u>**

48. As stated above, On December 6, 2018, Mrs. Handy walked into the DPD to make a report regarding Mrs. Dorcas claims that Plaintiff came to Maximus Inc. with a gun looking for Mrs. Handy.

49. Mrs. Handy was contacted by Defendant Dobbin, where she conveyed to him the third party story from her boss of Plaintiff allegedly showing up to her job with a gun.

50. After some probing by Defendant Dobbin, Mrs. Handy explained to him that on December 3, 2018, at approximately 1700 hours, that she and the Plaintiff got into an argument related to her relapsing on drugs.

51. She explained to Defendant Dobbin that she had relapsed on crack cocaine and methamphetamine a couple months prior.

52. She explained to Defendant Dobbin that the argument was about her drug abuse and Plaintiff's decision to make her leave the home.

53. Mrs. Handy explained to Defendant Dobbin that she eventually agreed to leave and that the Plaintiff dropped her off at her parents house.

54. Upon information and belief, Defendant Dobbin specifically asked Mrs. Handy if Plaintiff assaulted her and she told him that she was not assaulted.

55. Upon information and belief, Mrs. Handy never told Defendant Dobbin that Plaintiff assaulted her. 57. However, Defendant Dobbin made false statements in his police report that Plaintiff "punched" Mrs. Handy on the right side of her face 3 or 4 times with his "fist" causing her pain and visible injury.

58. Defendant Dobbin knew said statement to be false because Mrs. Handy informed him that she had not been assaulted by Plaintiff.

59. The Plaintiff assert, even if Mrs. Handy had told him that Plaintiff "punched her on the right side of her face 3 or 4 times with his fist," although she did not tell Defendant Dobbin no such thing, he would have known that the allegation was false, because there wasn't any visible bruises, cuts, marks, scratches, etc., on Mrs. Handy's face.

60. There were no breaks in the skin (lacerations), bruising around the eyes or widening of the distance between the eyes, which may mean injury to the bones between the eye sockets, changes in vision or the movement of the eyes, or improperly aligned upper and lower teeth.

61. There was nothing indicative of a small woman, with a white skin complexion, being punched on the right side of her face 3 or 4 times with a closed fist.

62. Such an accusation would have been too extraordinary and improbable to be believed, making the statement incredible.

## ii. **Defendant Nederhoed**

63. On December 7, 2018, Defendant Nederhoed was assigned the case to conduct a follow-up investigation.

64. Defendant Nederhoed interviewed Mrs. Handy via telephone.

65. Upon information and belief, during the telephone interview, Mrs. Handy informed Defendant Nederhoed that she never told Defendant Dobbin that Plaintiff assaulted her or punched her on the right side of her face 3 or 4 times.

66. Upon information and belief, Mrs. Handy informed Defendant Nederhoed that Plaintiff never assaulted her, and that none of the statements made by Defendant Dobbin in his police reports were true or made by her related to Defendant Dobbin's manufactured assault claims.

67. Upon information and belief, Mrs. Handy made it clear to Defendant Nederhoed that Defendant Dobbin completely made up the allegation that Plaintiff punched her on the right side of her face 3 or 4 times.

68. Defendant Nederhoed also contacted Mrs. Dorcas at Maximus Inc. as a part of her follow up investigation and was unable to verify that Plaintiff came to Maximus Inc. with a gun, however, she was able to verify that Mrs. Handy had not missed any days of work nor had any visible bruises or injuries during the days in question.

69. Defendant Nederhoed omitted the information and evidence stated in paragraphs 60-64, possibly in an effort to cover-up Defendant Dobbins misconduct.

8

70. On December 10, 2018, several days after the alleged domestic violence incident, Defendant Nederhoed made material false statements and omissions in her arrest warrant affidavit when she reported that Plaintiff "punched" Mrs. Handy on the right side of her face 3 or 4 times with his "fist" causing her pain and "visible" injury.

71. Defendant Nederhoed knew said statement to be false because Mrs. Handy informed her that she had not been assaulted by Plaintiff.

72. Mrs. Handy also informed Defendant Nederhoed that she never told Defendant Dobbin that Plaintiff assaulted her or punched her on the right side of her face 3 or 4 times.

73. Defendant Nederhoed reviewed the photographs that Defendant Dobbin took of Mrs. Handy and knew there were not any visible bruises, cuts, marks, scratches, etc., on Mrs. Handy's face.

74. This proposition was solidified through her follow-up investigation when she discovered via Mrs. Dorcas that Mrs. Handy had not missed any work nor came to work with any visible bruises or injuries during the days in question.

75. Although Defendant Nederhoed had evidence and information available to her, discovered from her telephone interviews with Mrs. Handy and Mrs. Dorcas, confirming that Mrs. Handy was not assaulted by Plaintiff, she submitted false police reports and a false arrest warrant affidavit, were she made averments and statements that weren't made to her by Mrs. Handy, but falsified her report and affidavit, for the purpose of misleading the issuing Magistrate, to make a probable cause determination to cause false criminal charges to be filed against Plaintiff for third degree assault.

76. Upon information and belief, Mrs. Handy never told Defendant Nederhoed that Plaintiff "punched" her on the right side of her face 3 or 4 times with his "fist."

77. Defendant Nederhoed made the false statements in her police report and arrest warrant affidavit that Plaintiff "punched" Mrs. Handy on the right side of her face 3 or 4 times with his "fist" causing her pain and "visible" injury.

78. Defendant Nederhoed knew said statement to be false because Mrs. Handy informed her that she had not been assaulted by Plaintiff, and Mrs. Dorcas informed her that Mrs. Handy had not missed any work or came to work with any visible bruises, marks, or injuries.

79. The Plaintiff assert, even if Mrs. Handy had told Defendant Nederhoed that Plaintiff "punched her on the right side of her face 3 or 4 times with his fist," and she did not, Defendant Nederhoed would have known that the allegation was false, because there was no visible bruises, cuts, marks, scratches, etc., on Mrs. Handy's face.

80. There were no breaks in the skin (lacerations), bruising around the eyes or widening of the distance between the eyes, which may mean injury to the bones between the eye sockets, changes in vision or the movement of the eyes, or improperly aligned upper and lower teeth.

81. Defendant Nederhoed reviewed the photographs submitted by Defendant Dobbin and knew there was nothing indicative of a small woman, with a white skin complexion, being punched on the right side of her face 3 or 4 times with a closed fist.

82. Such an accusation would have been too extraordinary and improbable to be believed, making the statement incredible.

83. However, Defendant Nederhoed submitted the false arrest warrant affidavit swearing under oath that Mrs. Handy had visible injuries from being punched by Plaintiff on the right side of her face 3 or 4 times although she knew there was no visible injuries to Mrs. Handy's face and knew the allegation to be false.

10

## CLAIMS FOR RELIEF

**l. First Claim: 42 U.S.C. § 1983- Fourth & Fourteenth Amendment- Malicious Prosecution;**

**Supporting Facts:**

84. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

85. Defendants were acting under color of state law in their actions and inactions which occurred at all relevant times to this action.

86. This claim one is being leveled against Defendants Dobbin and Nederhoed, in their individual capacities, as employees of the City and County of Denver, and the DPD.

87. The Fourth Amendment prohibits unreasonable searches and seizures.

88. An arrest is a seizure that must comply with the Fourth Amendment.

89. An arrest is unreasonable when it is not supported by probable cause.

90. Defendants Dobbin and Nederhoed caused Plaintiff to be subjected to an unreasonable arrest and seizure, unsupported by probable cause to believe that he had committed the offense of third degree assault.

91. In doing so, Defendants Dobbin and Nederhoed violated Plaintiff's Fourth and Fourteenth Amendment rights.

92. Defendants Dobbin and Nederhoed did not have probable cause to believe that Plaintiff committed the crime of third degree assault against Mrs. Handy.

93. Applying clearly-established law, a reasonable officer in Defendants Dobbin and Nederhoed's position would have known the facts did not amount to probable cause to charge Plaintiff with third degree assault.

94. A reasonable officer in Defendants' Dobbin and Nederhoed's position, applying clearly-established law, would have known that he or she did not have sufficient grounds to seek an arrest warrant against Plaintiff for third degree assault.

95. Nevertheless, acting without probable cause, Defendants Dobbin and Nederhoed procured a warrant for Plaintiff's arrest for third degree assault.

96. They did so on the basis of an affidavit that was deficient because it was dishonest.

97. In the affidavit submitted to procure the warrant for the Plaintiff's arrest on third degree assault, Defendants Dobbin and Nederhoed intentionally or recklessly included false statements that were material to the determination of probable cause, where they falsely misrepresented that Mrs. Handy told them that Plaintiff "punched" her on the "right side" of her face 3 or 4 times with his "fist," and were they falsely misrepresented that Mrs. Handy had visible injuries related to the assault.

98. In addition, Defendants Dobbin and Nederhoed intentionally or recklessly omitted facts that were material to the determination of probable cause.

99. The false statements and material omissions misled the judge into issuing a warrant for the Plaintiff's arrest on a false third degree assault charge.

100. Without the false material statements and without the material omissions, the affidavit would not have demonstrated probable cause to arrest Plaintiff for third degree assault.

101. Thus, Defendants Dobbin and Nederhoed deliberately or recklessly made material false statements and material omissions in the affidavit, resulting in Plaintiff's arrest and

imprisonment on a false third degree assault charge, without probable cause, for an offense Plaintiff did not commit, where Defendants knew Mrs. Handy did not tell them that Plaintiff "punched" her on the "right side" of her face 3 or 4 times with his "fist," and were they knew Mrs. Handy did not have visible injuries related to being assaulted.

102. In procuring an arrest warrant under these circumstances, Defendants Dobbin and Nederhoed violated clearly-established law.

103. A reasonable officer in Defendants' Dobbin and Nederhoed's position would have known that their actions in falsely stating that Plaintiff punched Mrs. Handy on the right side of her face 3 or 4 times causing visible injuries violated the Plaintiff's Fourth and Fourteenth Amendment rights.

104. Defendant Dobbin and Nederhoed's actions caused injury to the Plaintiff and to his clearly-established rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Handy requests that this Court enter judgment in his favor and against the Defendants, and award him all relief as allowed by law and equity, including, but not limited to, the following:

a. A declaration that Defendants violated the federal constitutional rights of Mr. Handy;

b. Actual economic damages as established at trial;

c. Compensatory damages, including but not limited to those for past and future

13

pecuniary and non-pecuniary losses, emotional distress, suffering, loss of

reputation, humiliation, inconvenience, mental anguish, loss of enjoyment of life,

and other non-pecuniary losses;

d. Punitive damages for all claims allowed by law in an amount to be determined at

trial;

e. Nominal damages;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorney's fees and the costs associated with this action as allowed by law;

h. Any further relief that this Court deems just and proper, and any other relief as

allowed by law.

i. A trial to a jury on all issues so triable.

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. See 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complain otherwise complies with the requirements of Rule 11.

Dated: 05/09/2023

Wyatt T. Handy Jr.
P.O. Box 913
Littleton, CO. 80160-0913
(720) 461-0787
w.t.handyjr@gmail.com

## CERTIFICATE OF MAILING

I hereby certify that on this **9th** day of **May    2023**, A true and correct copy of the foregoing attached **THIRD AMENDED VERIFIED COMPLAINT AND JURY DEMAND** as deposited into the United States Mail, postage prepaid by First Class postage, addressed to the following:

**UNITED STATES DISTRICT COURT**
901 19th Street
Denver, CO. 80294

Honor K. Moore
Denver City Attorney's Office
201 W. Colfax Avenue, Dept. 1108
Denver, CO 80202

By: _____
Wyatt T. Handy Jr.
P.O. Box 913
Littleton, CO. 80160-0913
(720) 461-0787
w.t.handyjr@gmail.com

16

Wyatt T. Handy Jr.
P.O. Box 913
Littleton, Co. 80160-0913

Legal Mail

United States District Court
901 19th Street
Denver, Co. 80294



RDC 23

80294

U.S. POSTAGE PAID
FCM LG ENV
AURORA, CO
80014
MAY 09, 23
AMOUNT
$1.98
R2301D155688-09